The People of the State of New York, Respondent, v. Anthony Salino, Appellant, and Rudolph Verdiccio and Michael Maisto, Defendants.

First Department, May 21, 1943.

*Harry G. Anderson* of counsel (*Samuel Bader* with him on the brief), for appellant.

*Bernard L. Alderman* of counsel (*Stanley H. Fuld* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

Dore, J. Defendant Salino and the codefendants Verdiccio and Maisto, after trial before the court of General Sessions and a jury, were convicted of the crime of robbery in the first degree (Penal Law, § 2124) and each defendant was sentenced to State prison for not less than fifteen nor more than thirty years. Defendant Salino alone appeals.

On the afternoon of June 16, 1942, two men armed with a revolver held up the office force of the K. & G. Manufacturing Co., 440 Broadway, New York, N. Y., and carried off the pay roll of approximately $2,300. On the trial the robbers were positively identified as defendants Verdiccio and Maisto each of whom on arrest made confessions admitting his part in the robbery. Their statements were read to the jury with the instruction that they could not be considered against appellant. Maisto stated that about a month before the robbery appellant had told him that " any time need a gun could let you have one; " that Verdiccio got the gun from appellant on the morn-

ing of the day of the robbery; that after the robbery Maisto and Verdiccio returned to Brooklyn, met appellant who was in a car, put the gun on the seat, went to appellant's house, opened the stolen pay envelopes, divided the money and gave appellant " a lot of money; maybe $500 " not for himself but to pay off debts.

Verdiccio's statement was substantially the same, but he added that before the robbery he met appellant on the street and asked him for the gun telling him he was going to use it for " a stickup " and appellant gave him the gun.

Appellant also made a statement which was read to the jury in which he admitted that he met the two codefendants on the morning of June 16, 1942, the day of the robbery; that they told him they were going over to New York and asked him would he be around later; that in the morning they were " broke " but when he met them in Brooklyn in the afternoon of that day about five o'clock they had money; that they gave him " about $200; " that he assumed that they had done some wrong in getting it " like stealing it." He denied that he got anything out of it saying that he used the money to pay off " shylocks." But he also said: " Did not get nothing, practically nothing." Defendant also admitted that on the line-up he had stated to the detectives that he received part of the proceeds of the robbery.

At the trial the People conceded appellant was not present at the scene of the robbery and of course concede that the statements or confessions of the codefendants were binding only on them and could not be considered against appellant. As indicated, the court so charged. The People, however, contend that appellant was a principal to the crime *in absentia.*

Appellant did not take the stand, but produced witnesses to testify that he was in Brooklyn on the afternoon of the day of the robbery flying pigeons on the roof of a friend's house until four-thirty or five P. M. Appellant's motions to dismiss the indictment against him at the close of the People's case and at the close of the whole case were denied and the court refused to charge at his request that there was no evidence to establish that appellant was a principal in the commission of the crime charged in the indictment.

The trial court charged the jury that if Salino aided and abetted the other two codefendants or counselled or procured them to commit the crime, he was guilty as a principal though absent when the crime was committed under section 2 of the Penal Law. That section provides that a person concerned in

the commission of a crime whether he directly commits the act or aids or abets in its commission whether present or absent and a person who directly or indirectly induces or procures another to commit a crime is a principal.

Appellant contends that if the evidence against him proves any crime it is the crime of receiving stolen property and not the crime of robbery, a separate and distinct offense; and that as a receiver only, he is neither a principal nor accessory to the robbery. ·

In *People* v. *Galbo* (218 N. Y. 283) the defendant and his brother were jointly indicted for murder. Defendant, a cripple who had lost both legs, was tried alone; the deceased was a strong man and the wounds on the body gave evidence of vigorous resistance; the People connected the defendant with the murder only by evidence that he attempted to secrete the body, and in no other way. The jury found him guilty of murder in the second degree, but the court held that the defendant was not proved to be a principal in the commission of the crime, reversed the judgment of conviction and ordered a new trial. By CARDOZO, J., the court said: " It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal. That rule has most frequently been applied in cases of burglary (*Knickerbocker* v. *People,* 43 N. Y. 177) and larceny (*Stover* v. *People,* 56 N. Y. 315) and receiving stolen goods (*Goldstein* v. *People,* 82 N. Y. 231) * * *. The fruits of crime are themselves objects of desire; the possessor, at least presumably, has them because he wishes to enjoy them. * * *.

" Only half of the problem, however, has been solved when guilty possession fixes the identity of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? Judges have said that if nothing more is shown, we may take him to be the thief (*R.* v. *Langmead,* 9 Cox C. C. 464). But as soon as evidence is. offered that the theft was committed by some one else, the inference changes, and he becomes a receiver of stolen goods (*Goldstein* v. *People, supra; People* v. *Friedman,* 149 App. Div. 873, 877; 2 Russell on Crimes [6 ed.], p. 287 *et seq.*). Sometimes the circumstances may make it proper for a jury to say which inference is the true one (*R.* v. *Langmead, supra*)."

Appellant confessed he met the two codefendants on the morning of the robbery, that they then arranged to meet him

on the afternoon thereof, that they met him as arranged, that at the meeting they divided the proceeds of the robbery with him and he received part thereof to discharge debts. The inference of guilt from possession is one of fact, not of law. Here the three defendants were tried together and while the trial court properly charged that the statements of the other two could not be considered against appellant, the jury's determination of the issues of appellant's guilt may be based as much upon the strong impression received from the fact that all three statements were received on the one trial as upon the facts the jury had the right to consider against appellant alone. In these circumstances we think the verdict convicting the appellant of the crime of robbery in the first degree was against the weight of the evidence.

The judgment of conviction should be reversed and a new trial ordered.

MARTIN, P. J., UNTERMYER, COHN and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered.